UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LISA RENEE FOWLER,<br><br>    Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | Case No.17-cv-00196-JSC<br><br>**ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 16, 20 |

Plaintiff Lisa Renee Fowler seeks social security benefits for a combination of mental and physical impairments, including: tendonitis, back problems, panic attacks, arthritis, a head injury, leg pain, and anxiety. (Administrative Record ("AR") 188-92, 211.) Pursuant to 42 U.S.C. § 405(g), Plaintiff filed this lawsuit for judicial review of the final decision by the Commissioner of Social Security ("Commissioner") denying her benefits claim. Now before the Court are Plaintiff's and Defendant's Motions for Summary Judgment.[1] (Dkt. Nos. 16 & 20.) Because the Administrative Law Judge's ("ALJ") decision is free of legal error and supported by substantial evidence, the Court DENIES Plaintiff's motion and GRANTS Defendant's cross-motion.

## LEGAL STANDARD

A claimant is considered "disabled" under the Social Security Act if she meets two requirements. *See* 42 U.S.C. § 423(d); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). First, the claimant must demonstrate "an inability to engage in any substantial gainful activity by

---

[1] Both parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). (Dkt. Nos. 5 & 10.)

reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Second, the impairment or impairments must be severe enough that she is unable to do her previous work and cannot, based on her age, education, and work experience "engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). To determine whether a claimant is disabled, an ALJ is required to employ a five-step sequential analysis, examining: (1) whether the claimant is "doing substantial gainful activity"; (2) whether the claimant has a "severe medically determinable physical or mental impairment" or combination of impairments that has lasted for more than 12 months; (3) whether the impairment "meets or equals" one of the listings in the regulations; (4) whether, given the claimant's "residual functional capacity," the claimant can still do her "past relevant work"; and (5) whether the claimant "can make an adjustment to other work." *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012); *see* 20 C.F.R. §§ 404.1520(a), 416.920(a).

## PROCEDURAL HISTORY

In January 2014, Plaintiff filed an application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. (AR 188.) Plaintiff alleged disability beginning November 6, 2013. (AR 28.) The application was denied initially and on reconsideration. (AR 94-95, 106-108.) Plaintiff then filed a request for a hearing before an ALJ. (AR 128.)

On June 16, 2015, a hearing was held before ALJ Mary Beth O'Connor in San Rafael, California, during which both Plaintiff and a vocational expert ("VE"), Corinne J. Porter, testified. (AR 23.)

**A. The ALJ's Findings**

On October 20, 2015, the ALJ issued a written decision denying Plaintiff's application and finding that Plaintiff was not disabled within the meaning of the Social Security Act and its regulations taking into consideration the testimony and evidence, and using the SSA's five-step sequential evaluation process for determining disability. (AR 10-18.); *see* 20 C.F.R. §§ 404.1520(a), 416.920(a).

At step one, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity since November 6, 2013, the alleged onset date. (AR 12); *see* 20 C.F.R. §§ 404.1571 *et seq.*, 416.971 *et seq.*

At step two, the ALJ determined that the objective medical evidence indicated that Plaintiff's anxiety disorder and substance abuse constitute "severe impairments" within the meaning of the regulations. (AR 12); *see* 20 C.F.R. §, 416.920(c). However, the ALJ concluded that the medical evidence of record did not indicate that claimant had more than minimal functional restriction due to any physical impairment during the period at issue, and thus concluded that Plaintiff did not have any severe physical impairments. (AR 12.)

At the third step, the ALJ concluded that Plaintiff did not have an impairment or a combination of impairments that meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id*.) At this step, the ALJ considered whether Plaintiff's mental impairments met the listing of Sections 12.06 and 12.09, paragraphs (B) and (C). (*Id*.) With regards to paragraph (B), she concluded that they did not, on the grounds that Plaintiff's mental impairments do not cause (1) at least two "marked" limitations, where a marked limitation means more than moderate but less than extreme, or (2) one "marked" limitation and "repeated" episodes of decompensation, each of extended duration, which means three episodes within one year, or an average of once every four months, each lasting for at least two weeks. (AR 13) The ALJ also concluded that no paragraph C criteria were present. (AR 14.)

The ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant is limited to the performance of simple routine tasks involving simple work-related decisions. (AR 14.) To reach this conclusion, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms [we]re only partially credible insofar as they are not corroborated by the medical evidence of record." (AR 14-15.) The ALJ noted that the medical evidence of record documents "generally routine care for temporary conditions and does not reflect functional limitations to the

degree alleged by the claimant." (AR 15.) As far as the medical opinion evidence, the ALJ gave little weight to the opinion of a Dr. Kozart, Plaintiff's treating physician, because his opinion was inconsistent with the medial evidence of record as a whole including Plaintiff's treatment history, reported/demonstrated functional abilities, and Dr. Kozart's own examination and treatment records. (AR 16.) The ALJ gave some weight to the opinion of examining physician Dr. Larson noting that the RFC was generally consistent with his opinion, and where it was not, the record as a whole did not support his functional limitations. (AR 17.) The ALJ gave considerable weight to the opinions of state agency reviewing psychiatric reviewers Dr. Meenkshi and Dr. Dalton because their opinions were supported by substantial evidence and were not inconsistent with the evidence received at the hearing level. (*Id.*)

At step four, the ALJ found that Plaintiff was capable of performing her past relevant work as a cashier and thus not entitled to disability benefits. (*Id.*)

**B. Appeals Council**

Plaintiff filed a request for review on November 5, 2015, arguing that the ALJ committed errors of law and that her decision was not supported by substantial evidence. (AR 5.) On November 16, 2016, the Appeals Council considered Plaintiff's request for review and denied review, making the ALJ's decision final. (AR 1–3.)

**C. This Action**

Plaintiff commenced this action for judicial review on January 13, 2017 pursuant to 42 U.S.C. §§ 405(g), 1383(c). (Dkt. No. 1.) Both parties thereafter consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). (Dkt. Nos. 5 & 10.) Plaintiff then filed her motion for summary judgment and the Commissioner filed her cross-motion. (Dkt. Nos. 16 & 20.)

**DISCUSSION**

Plaintiff challenges only one aspect of the ALJ's decision: her treatment of the opinion of psychiatric examining physician Jamie Larson. Plaintiff insists that the ALJ committed legal error by rejecting Dr. Larson's opinion. The ALJ, however, did not reject Dr. Larson's opinion; rather

4

1  she afforded it some weight, but found that the record as whole did support all of Dr. Larson's

2  limitations. Substantial evidence supports the ALJ's decision.

## I. The ALJ's Consideration of Medical Opinion Evidence

### A. Legal Standard

In the Ninth Circuit, courts must "distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995) (as amended (Apr. 9, 1996)). "A treating physician's opinion is entitled to more weight than that of an examining physician, and an examining physician's opinion is entitled to more weight than that of a nonexamining physician." *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). If a treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991). And "even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record for so doing." *Lester*, 81 F.3d at 830 (internal citations omitted). Likewise, "the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* at 830–31.

"The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting medical evidence, stating his interpretation thereof, and making findings." *Cotton v. Bowen*, 799 F.2d 1403, 1407 (9th Cir. 1986). "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." *Lester*, 81 F.3d at 831 (internal citation omitted). Ultimately, "the ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Embrey v. Bowen*, 849 F.2d 418, 421–22 (9th Cir. 1988).

"When an ALJ does not explicitly reject a medical opinion or set forth specific, legitimate reasons for crediting one medical opinion over another, he errs. In other words, an ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." *Garrison v. Colvin*, 759 F.3d 995, 1012–13 (9th Cir. 2014) (internal citation omitted). In conducting its review, the ALJ "must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Hill v. Astrue*, 388 F.3d 1144, 1159 (9th Cir. 2012) (internal citations omitted). "An ALJ may not cherry-pick and rely on portions of the medical record which bolster his findings." *See, e.g.*, *Holohan v. Massanari*, 246 F.3d 1195, 1207–08 (9th Cir. 2001) (holding that an ALJ may not selectively rely on some entries and ignore others "that indicate continued, severe impairment"). "Particularly in a case where the medical opinions of the physicians differ so markedly from the ALJ's[,]" "it is incumbent on the ALJ to provide detailed, reasoned, and legitimate rationales for disregarding the physicians' findings." *Embrey*, 849 F.2d at 422.

**B. Analysis**

To reject the opinion of Plaintiff's examining psychologist Dr. Larson, the ALJ was required to provide specific and legitimate reasons supported by substantial evidence for doing so. *See Lester*, 81 F.3d at 830–31. Here, the ALJ stated that she gave

> some weight to the opinion of Dr. Larson, which is generally consistent with Dr. Larson's own examination. However, the evidence of record as a whole, including the claimant's treatment history and reported/demonstrated functional abilities, does not reflect this degree of impairment.

(AR 17.) In contrast, the ALJ gave "[c]onsiderable weight" to the opinions of State Agency reviewing psychiatric reviewers Dr. Meenaskshi and Dr. Dalton because they were "supported by substantial evidence and are not inconsistent with evidence received at the hearing level." (*Id*.)

As an initial matter, Plaintiff maintains that the ALJ "rejected" Dr. Larson's opinion. Not so. The ALJ gave Dr. Larson's opinion "some weight." While the ALJ's RFC did not adopt Dr. Larson's finding that Plaintiff would have "moderate to severe impairments performing work

6

activities consistently, maintaining regular attendance in the workplace or dealing with the usual stressors encountered in the workplace without decompensation," the ALJ otherwise credited Dr. Larson's findings in formulating her RFC. (AR 379.) In particular, the ALJ's conclusion that Plaintiff was limited to "simple routine tasks involving simple work-related decisions" is consistent with Dr. Larson's opinion that Plaintiff would have "mild to moderate difficulties performing simple and repetitive tasks," that she has "some ability to focus," and that she is "relatively good at accepting instructions from supervisors." (AR 14, 379.)

Next, Plaintiff insists that the ALJ failed to identify specific and legitimate reasons for rejecting Dr. Larson's opinion. This argument is likewise unavailing. Although the ALJ did not specifically identify the evidence which contradicted Dr. Larson's findings in the same paragraph in which she afforded his opinion some weight, elsewhere in her opinion the ALJ discussed the medical evidence at length including that which contradicted Dr. Larson's finding. The ALJ is not required to recite the magic words, "I reject this doctor's opinion because." *Magllanes v. Bowen*, 881 F.2d 747, 755 (9th Cir.1989). Rather, the court is permitted to "draw[] specific and legitimate inferences from the ALJ's opinion." *Id*. Here, specific and legitimate inferences from elsewhere in the ALJ's opinion support the ALJ's finding.

First, Dr. Larson's opinion is consistent with the opinions of the two other examining physicians, Dr. Zipperle and Dr. Samuelson, in all respects *except* for the *same* basis rejected by the ALJ. (AR 274, 281, 379.) The ALJ discussed the physicians' cumulative findings at length noting that their opinions did not support more than mild functional limitations in the activities of daily living or social functioning and only moderate functional limitations with respect to concentration, persistence, and pace. (AR 13.) While Dr. Zipperle concluded that Plaintiff might have "some issues" with stress in the workplace (AR 274) and Dr. Samuelson concluded that Plaintiff was "moderately impaired" in her ability to maintain regular attendance in the work place and performance of activities on a consistent basis (AR 281), only Dr. Larson concluded that Plaintiff would have "moderate to severe" impairments performing work activities consistently (AR 379). That Dr. Larson's opinion in this regard was inconsistent with the clinical findings of the other examining physicians is a specific and legitimate reason for rejecting his opinion. *See*

7

*Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (permitting the rejection of a medical opinion that is inconsistent with clinical findings).

Second, Dr. Larson's own findings, as cited elsewhere by the ALJ, were inconsistent with his finding that Plaintiff cannot work. On Plaintiff's mental status examination, Dr. Larson noted that Plaintiff had adequate thought process, communication, attention/concentration, and executive and intellectual functioning. (AR 15, 374-379.) Dr. Larson did not identify any limitations on Plaintiff's activities of daily living and noted that she arrived on time for her appointment having utilized the bus system to get there, and that she "spends her day working with the legal services as well as attending her various other appointments." (AR 374, 376.) Dr. Larson nonetheless concluded without explanation that Plaintiff would have moderate to severe difficulty with regular work attendance. Contradictory findings by a treating or examining physician are a specific and legitimate reason for rejecting a limitation based on these contradictory findings. *See Hennessey v. Berryhill*, No. 16-15828, 2017 WL 4708356, at *1 (9th Cir. Oct. 19, 2017) (holding that an examining physician's internally inconsistent opinion was a specific and legitimate reason for rejecting his opinion); *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (contradictory notes and recorded observations were "a clear and convincing reason for not relying on the doctor's opinion regarding [plaintiff's] limited ability to stand and walk.").

Third, as the ALJ noted, the record as a whole lacks objective medical evidence corroborating Plaintiff's inability to work due to either arm and hand pain or anxiety. The ALJ noted the absence of such evidence with respect to Plaintiff's alleged arm and hand pain in the paragraph preceding the paragraph discussing the weight afforded to Dr. Larson's opinion (AR 16 (finding no support for Plaintiff's testimony that her hands froze up daily in the medical evidence, claimant's reports to treatment providers, or in objective clinical observations).) Plaintiff herself testified that she had not received any treatment for hand or arm pain since 2013. While she requested that the record be held open after her hearing to offer evidence regarding medical visits from the two months prior to the hearing, the submitted medical records did not support her claim regarding debilitating arm or hand pain as the ALJ noted. (AR 16.) The records noted Plaintiff's complaints of neck and hand pain but stated that the etiology was "unclear" because "clinically

8

she looks okay" and there were no "clear physical findings regarding" her pain.[2] (AR 538, 540.) Plaintiff had motor strength of "5 out of 5 all extremities" and "neck limitation reveals no limitation of motion, no radicular symptoms elicited." (AR 540.)

Likewise, substantial evidence supports the ALJ's finding that Plaintiff's anxiety does not preclude her from regular work attendance. (AR 13, 16.) Plaintiff reported to Dr. Larson that her "panic has worsened virtually every month for the past few years." (AR 375.) She testified, however, that she had not taken anxiety medication in six months. (AR 50.) Further, although Plaintiff occasionally reported anxiety to her providers, the medical records consistently state that the anxiety was not the focus of the visit; instead, Plaintiff presented seeking a refill of her pain medication. (*See, e.g.*, AR 501, 510, 515, 529.) The one exception was on August 31, 2014, when Plaintiff presented seeking disability paperwork stating that she could not work due to anxiety around "large groups of people." (AR 523.) However, Plaintiff's treatment notes from the two weeks prior and two weeks following this visit do not reference her experiencing symptoms of anxiety at all. (AR 520-21, 525-26.) The ALJ noted all of this when concluding that the medical evidence does not support Plaintiff's allegations regarding the frequency or severity of her anxiety. (AR 16.) The ALJ's conclusion that Dr. Larson's opinion was inconsistent with the objective medical evidence is a specific and legitimate reason for discounting his opinion. *Tommasetti*, 533 F.3d at 1041 (finding that inconsistency with other medical evidence is a specific, legitimate reason for rejecting a medical provider's opinion).

Finally, the ALJ reasonably gave more weight to the opinions of Dr. Dalton and Dr. Meenaksi, whose conclusions were consistent with other independent evidence in the record including the opinions of the other examining physicians: Dr. Zipperle and Dr. Samuelson, and the objective medical evidence. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (finding that contrary opinion of a non-examining medical expert may constitute substantial evidence when it is consistent with other independent evidence in the record). These opinions

---

[2] Even Dr. Larson, commented on the lack of a clinical basis for Plaintiff's reports of pain noting that "it [wa]s unclear if Ms. Fowler is accurately reporting her symptoms." (AR 379.)

9

likewise provide a specific and legitimate basis for rejecting Dr. Larson's opinion regarding Plaintiff's ability to work.

Accordingly, the ALJ provided specific and legitimate reasons, supported by substantial evidence in the record, for according only some weight to Dr. Larson's opinion.

### C. Even If the ALJ Erred, Any Error Was Harmless

Even when an ALJ errs, reversal is not warranted if the error is harmless. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). An error is harmless "where it is inconsequential to the ultimate nondisability determination." *Id*. (internal quotation marks omitted). Accordingly, "in each case [the Court] look[s] at the record as a whole to determine whether the error alters the outcome of the case." *Id*. In the instant case, even if the ALJ did err by failing to recite specific and legitimate reasons for discounting Dr. Larson's opinion that Plaintiff would have difficulty regularly attending work and handling workplace stressors, this error is harmless because as discussed above the record as a whole does not support this opinion. *See Tommasetti*, 533 F.3d at 1041 (ALJ may reject a physician's opinion that is inconsistent with medical records).

## CONCLUSION

For the reasons stated above, Plaintiff's motion for summary judgment is DENIED and the Commissioner's cross-motion is GRANTED.

This Order disposes of Docket Nos. 16 & 20.

**IT IS SO ORDERED.**

Dated: February 7, 2018

_____
JACQUELINE SCOTT CORLEY
United States Magistrate Judge